UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-20317-CR-KMM/LOUIS

UNITED STATES OF AMERICA

vs.

YOEL GUTIERREZ PEREZ,

      **Defendant.**

                                            /

## FACTUAL PROFFER

If this matter had proceeded to trial, the government and the defendant Yoel Gutierrez Perez (the "defendant"), by and through his attorney, hereby agree that, were this case to proceed to trial, the United States would prove beyond a reasonable doubt the following facts, among others, which occurred, in the Southern District of Florida:

1. The Medicare Program ("Medicare") was a federal health care program that provided free or below-cost health care benefits to individuals who were sixty-five years of age or older or disabled. The benefits available under Medicare were governed by federal statutes and regulations. The United States Department of Health and Human Services ("HHS"), through its agency the Center for Medicare and Medicaid Services ("CMS"), oversaw and administered Medicare. Individuals who received benefits under Medicare were commonly referred to as Medicare "beneficiaries."

2. Medicare was a "health care benefit program" as defined in Title 18, United States Code, Section 24(b).

3. Medicare was subdivided into multiple program "parts." Medicare Part A covered health care services provided by hospitals, skilled nursing facilities, hospices, and home health

1

agencies. Medicare Part B covered physician services and outpatient care, including an individual's access to durable medical equipment ("DME").

4. DME was equipment designed for everyday or extended use and for a medical purpose, such as orthotic devices, speech generating devices, collagen dressing, wheelchairs, prosthetic limbs, wheelchairs, nebulizers, and oxygen concentrators.

5. DME companies, physicians, and other health care providers that provided services to Medicare beneficiaries were referred to as Medicare "providers." To participate in Medicare, providers were required to submit an application in which the providers agreed to comply with all Medicare-related laws and regulations. If Medicare approved a provider's application, Medicare assigned the provider a Medicare "provider number." A health care provider with a Medicare provider number could file claims with Medicare to obtain reimbursement for services rendered to beneficiaries.

6. Enrolled Medicare providers agreed to abide by the policies, procedures, rules, and regulations governing reimbursement. To receive Medicare funds, enrolled providers were required to abide by the Anti-Kickback Statute and other laws and regulations. Providers were given access to Medicare manuals and services bulletins describing billing procedures, rules, and regulations.

7. Medicare reimbursed DME companies and other health care providers for items and services rendered to beneficiaries. To receive payment from Medicare, providers submitted or caused the submission of claims to Medicare, either directly or through a billing company.

8. A Medicare claim for DME reimbursement was required to set forth, among other things, the beneficiary's name and unique Medicare identification number, the equipment provided to the beneficiary, the date the equipment was provided, the cost of the equipment, and the name

and unique physician identification number of the physician who prescribed or ordered the equipment.

9. A claim for DME submitted to Medicare qualified for reimbursement only if it was medically necessary for the treatment of the beneficiary's illness or injury, prescribed by a licensed physician, and actually provided to the beneficiary as billed.

10. From in or around June 2006, through in or around September 2006, the defendant engaged in a scheme to unlawfully enrich himself by, among other things: (a) submitting and causing the submission of false and fraudulent claims to a health care benefit program through interstate wire communications; (b) concealing the submission of false and fraudulent claims to a health care benefit program; (c) concealing the receipt of the fraud proceeds; and (d) diverting the fraud proceeds for their personal use and benefit.

11. In furtherance of the scheme, the defendant provided his personal identifying information and signed various documents representing to the Florida Secretary of State, Bank 1, and Medicare that the defendant was an officer and authorized representative of Best Choose Medical Supplies, Inc. ("Best Choose"), a Florida corporation located in Miami, Florida, that purportedly provided DME to Medicare beneficiaries.

12. Specifically, the defendant signed the following documents in which he certified that he was an officer and authorized representative of Best Choose:

    a. On or about June 16, 2006 and August 1, 2006, respectively, the defendant signed a Certification Statement as the Authorized Official of Best Choose in which he certified that he was the Director/Officer and Authorized Official for Best Choose, which certifications were subsequently transmitted to Medicare.

    b.    On or about June 19, 2006, the defendant signed Articles of Amendment to Articles of Incorporation of Best Choose in which he certified that he was the President, Secretary, Treasurer, and Registered Agent of Best Choose. That document was submitted to both the Florida Secretary of State and Medicare as proof that the defendant was the true owner of Best Choose.

    c.    On or about June 19, 2006, the defendant signed a signature card and Certificate of Resolutions as an Officer of Best Choose so that he could be added as a signatory to Best Choose's business checking account, ending in -6863, at Bank 1.

13.    From in or around June 2006, through in or around September 2006, Best Choose billed Medicare for DME claims, which claims were submitted through an Internet portal that caused a communication in interstate commerce. One of those claims, Claim No. 06185896695000, was submitted on or about July 4, 2006, on behalf of beneficiary A.M., for Neg press wound therapy pump, in the amount of $2,100.

14.    Dr. A.B. was the purported prescribing physician for approximately 2,818 claims submitted by Best Choose, including Claim No. 06185896695000. Dr. A.B., however, did not treat any of the patients or prescribe any of the DME for which Best Choose billed Medicare for DME.

15.    From on or about June 22, 2006, through on or about September 29, 2006, Medicare paid Best Choose approximately $595,690 for fraudulently-billed DME claims through electronic funds transfers and checks into Best Choose's business checking account, ending in -6863, at Bank 1 in the Southern District of Florida while the defendant was a signatory.

16. The United States of America does not have any evidence that the defendant personally submitted the fraudulent billing to Medicare. According to the defendant, he received approximately $10,000 to sign documents and act as a sham owner.

17. On or about August 17, 2022, the defendant entered the country and was arrested. The United States of America does not have any evidence that the defendant knew he was subject to indictment prior to re-entry into the Southern District of florida.

18. These are not the only facts known to the United States of America in this matter, nor are they all of the facts that the United States of America would present, had this case gone to trial.

JUAN ANTONIO GONZALEZ
UNITED STATES ATTORNEY

Date: 12/16/2022   By: _____
STEPHANIE HAUSER
ASSISTANT UNITED STATES ATTORNEY

Date: 12/16/2022   By: _____
DAVID TUCKER
ATTORNEY FOR DEFENDANT

Date: 12/16/2022   By: _____
YOEL GUTIERREZ PEREZ
DEFENDANT

5